# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____  )
                                )
TRENITA COLLINS,                )
                                )
            Plaintiff,          )
                                )
        v.                      )       Civil Action No. 15-CV-00136 (KBJ)
                                )
DISTRICT OF COLUMBIA,           )
            Defendant.          )
                                )
_____  )

## MEMORANDUM OPINION ADOPTING UNCONTESTED REPORT & RECOMMENDATION OF MAGISTRATE JUDGE

Plaintiff Trenita Collins ("Plaintiff") is the mother of "D.C."—a minor child who is a student with a disability in the District of Columbia Public Schools System ("DCPS").  In this lawsuit, Plaintiff seeks to recover from defendant District of Columbia ("Defendant") attorneys' fees and costs that she incurred in connection with an administrative due process proceeding in which she alleged that DCPS failed to provide D.C. with a free appropriate public education ("FAPE") under the Individuals with Disabilities Education Act ("IDEA").  The Administrative Hearing Officer decided in Plaintiff's favor on one of the five grounds that she advanced; in the instant action, Plaintiff seeks a judgment declaring that she was the prevailing party in the administrative proceeding and awarding her $59,361 in attorneys' fees and costs.

On January 30, 2015, this Court referred this matter to a Magistrate Judge for full case management.  On May 15, 2015, Plaintiff filed a motion for summary judgment (Pl.'s Motion for Summ. J., ECF No. 11), arguing that she prevailed at the administrative level and seeking attorneys' fees and costs in the amount of $59,361

under the IDEA.  (*Id.* at 3-7.)  On June 12, 2015, Defendant filed a cross-motion for summary judgment (Def.'s Opp'n to Pl.'s Mot. for Summ. J. & Cross-Mot. for Summ. J., ECF No. 13) in which it conceded that Plaintiff was a prevailing party with respect to one of her claims, but asserted that this Court should reduce the fee award because (1) counsel's hourly rate is unreasonable, with respect to both the administrative proceeding and the instant proceeding, and (2) Plaintiff only partially prevailed at the administrative level.  (*Id.* at 2, 4–10.)

Before this Court at present is the Report and Recommendation that the assigned Magistrate Judge, Alan Kay, has filed regarding the parties' cross-motions for summary judgment.  (*See* ECF No. 20, attached hereto as Appendix A.)  The Report and Recommendation reflects Magistrate Judge Kay's opinion that the Court should grant in part and deny on part each party's motion.  (*Id.* at 17.)  Specifically, Magistrate Judge Kay finds that counsel billed a reasonable number of hours overall (*id.* at 11), but recommends that this Court discount counsel's fees for the administrative proceeding by 35% to reflect Plaintiff's status as a partially prevailing party (*id.* at 10–11), and that counsel's reimbursable hourly rate should be set at "75% of the 2014-2015 *Laffey* Matrix rates with regard to counsel's work on the administrative proceeding and [] at 50% of those *Laffey* Matrix rates with regard to the 4.8 hours counsel billed for [] preparation of the fee petition and review of the billing records" (*id.* at 15).[1]

The Report and Recommendation also advises the parties that either party may file written objections to the Report and Recommendation, which must include the

---

[1] The *Laffey* Matrix was developed in *Laffey v. Northwest Airlines, Inc.*, 572 F. Supp. 354, 372 (D.D.C. 1983) *aff'd in part, rev'd in part on other grounds*, 746 F.2d 4 (D.C. Cir. 1984), and it is generally used to determine a reasonable hourly rate for complex federal litigation in the District of Columbia.  *See Heller v. D.C.*, 832 F.Supp.2d 32, 40 (D.D.C. 2011).

portions of the findings and recommendations to which each objection is made and the basis for each such objection.  (*Id.* at 18.)  The Report and Recommendation further advises the parties that failure to file timely objections may result in waiver of further review of the matters addressed in the Report and Recommendation.  (*Id.*)  Under this Court's local rules, any party who objects to a Report and Recommendation must file a written objection with the Clerk of the Court within 14 days of the party's receipt of the Report and Recommendation.  LCvR 72.3(b).  As of this date—over a month after the Report and Recommendation was issued—no objections have been filed.

This Court has reviewed Magistrate Judge Kay's report and agrees with its careful and thorough analysis and conclusions. Thus, the Court will **ADOPT** the Report and Recommendation in its entirety.  Accordingly, the Court will **GRANT IN PART** and **DENY IN PART** Plaintiff's Motion for Summary Judgment and **GRANT IN PART** and **DENY IN PART** Defendant's Cross-Motion for Summary Judgment, and will award Plaintiff attorneys' fees in the amount of $28,683.30 and costs in the amount of $787.00.

A separate Order accompanies this Memorandum Opinion.


DATE:  November 30, 2015                        *Ketanji Brown Jackson*
                                                _____
                                                KETANJI BROWN JACKSON
                                                United States District Judge

**Appendix A**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

———————————————————— )
TRENITA COLLINS, as Parent/Guardian )
of D.C., )
 )
            Plaintiff, )
       v. )        Civil Action No. 15-136 (KBJ/AK)
 )
DISTRICT OF COLUMBIA, )
 )
            Defendant. )
———————————————————— )

**REPORT AND RECOMMENDATION**

This case was referred to the undersigned, on January 30, 2015, for full case management

which includes a Report and Recommendation on any dispositive motion. (1/30/15 Minute Order.)

Pending before the undersigned is Plaintiff's Motion for Summary Judgment ("Motion") [11] and

Memorandum in Support thereof ("Memorandum") [11-1]; Defendant's Cross-Motion [13] and

Opposition to Motion [14] (collectively "Cross-Motion"); Plaintiff's Reply to the Opposition

("Pl.'s Reply")[16]; and Defendant's Reply ("Def.'s Reply") [19]. Plaintiff Trenita Collins

("Plaintiff") requests from Defendant District of Columbia ("Defendant" or "the District") a total

of $59,361.00 in attorneys' fees and costs[1] incurred in connection with an administrative

proceeding brought pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20

---

[1] Plaintiff's counsel billed $55,980.00 in fees and $2,137.00 in costs (which includes time billed for travel) totaling $58,117.00, but Plaintiff requests an additional $1,244.00, to make counsel's fees consistent with the *Laffey* Matrix rate. (Memorandum [11-1] at 7.) Counsel's underlying claim for attorney's fees also includes some charges incurred in filing the fee petition ("fees-on-fees). (*Id.*)

U.S.C. §1400, *et seq.* (Memorandum at 2, 7.)[2] Defendant challenges Plaintiff's prevailing party

status and the hourly rate applied to Plaintiff's claims for attorney's fees.  (Cross-Motion at 4-10.)

Defendant further contests the hourly rate applied to Plaintiff's claim for "fees-on-fees."  (Cross-

Motion at 10.)

## I. BACKGROUND

Plaintiff Trenita Collins is the mother of D.C. (hereinafter referred to as "D.C." or "the

student"), a minor child who is a student with a disability.  (Memorandum at 2.) Defendant

District of Columbia is a municipal corporation that operates the District of Columbia Public

Schools System ("DCPS"). (Complaint [1] ¶4.)[3] The District receives federal funds pursuant to

the IDEA and it is obliged to comply with the IDEA, which guarantees all children with

disabilities a free appropriate public education ("FAPE"), 20 U.S.C. §1400(d)(1)(A); 20 U.S.C.

§1411. In general, FAPE "is available to all children with disabilities residing in the State

between the ages of 3 and 21[.]"  20 U.S.C. §1412(a)(1)(A).

In the instant case, the student, D.C., attended Education Campus from kindergarten

through the middle of his 6th grade year, which was School Year ("SY") 2012-2013.  (Motion,

Exh. 2 [Hearing Officer Determination] ("HOD") [11-5] at 4.)  On September 30, 2009, the

student's IEP Team at Education Campus convened to evaluate the student to determine whether

he was a student with a disability under the IDEA.  (*Id.*) The student was classified as a student

with autism spectrum disorder and specifically identified with Pervasive Developmental

Disorder, Not Otherwise Specified ("PDD-NOS").  (*Id.*)  On September 20, 2012, the IEP Team

---

[2] The page numbers referenced are ECF [Electronic Case Filing] system page numbers located at the top right corner of the page.  The exhibit numbers referenced herein have also been designated through the ECF system.
[3] References to Defendant District of Columbia herein include DCPS, the Respondent during the administrative process.

convened again and determined that the student required 5 hours per week of specialized instruction outside the general education setting and 15 hours per week inside the general education setting; 180 minutes per month of occupational therapy outside general education; 240 minutes per month of speech and language pathology outside general education; 120 minutes per month of behavior support services inside general education, and the student did not require a dedicated aide. (HOD at 4.)

On January 7, 2013, the student transferred to middle school and was placed in a program for students with high functioning autism.  (HOD at 5.)  On January 31, 2013, the student received a psychological assessment whereby the school psychologist noted "cognitive slippage" that was possibly attributable to other disabilities.  (HOD at 5-6.)  The psychologist "did not have any evidence of these [other] disability categories due to the lack of medical assessments" and he accordingly stated that the student "aged out of the PDD-NOS classification and that the student is s student with an Intellectual Disability ("ID") under the IDEA."  (HOD at 6.)  On April 9, 2013, the student's IEP Team determined that the student had an ID and that he continued to require the aforementioned services inside and outside general education, in the amounts indicated above. (HOD at 6.)

On February 6, 2014, the IEP Team at the middle school convened and determined that the student had an ID under the IDEA and placed the student in a full time placement due to his disability category.  (HOD at 7.)[4]  The Team determined that the student required 25 hours per week of specialized instruction outside general education; 180 minutes per month of occupational therapy outside general education; 240 minutes per month of speech and language pathology outside general education and 120 minutes per month of behavior support services

_____

[4] The parent had requested additional assessments because she disagreed with the ID classification.  (HOD at 7.)

inside general education but no dedicated aide. (HOD at 7.)  The Hearing Officer found that "[t]he team did not consider any harmful effect of placing the student in a more restrictive setting [and] [n]o transition plan was developed for the student[;] [h]owever, the student remained in his general education classes until the end of the 2013-2014 school year."  (HOD at 7.)

In March 2014, the student received a comprehensive psychological assessment. (HOD at 7.) On June 19, 2014, the IEP team at the middle school convened to review the student's March 2014 comprehensive psychological assessment and the Plaintiff was informed that the high functioning autism program was moving from the middle school at the end of SY 2013-2014 and that a new program for students with ID would take its place.  (HOD at 9.)  According to the Hearing Officer, the student made progress on his IEP goals during SY 2013-2014 while he was in general education classes on a full time basis.  (*Id.*)  At the beginning of SY 2014-2015, the student was placed in a separate special education class for IDEA students with ID, in middle school.  (*Id.*)

On August 8, 2014, Plaintiff filed a due process complaint (Motion, Exh. 1 [Administrative Due Process Complaint Notice] [11-4]), alleging the following denials of FAPE: 1. Failure to adequately evaluate the student; 2. Failure to develop appropriate IEPs in April 2013 and February 2014; 3. Failure to provide appropriate placement for SY 2014-2015; 4. Failure to provide prior written notice to the parent; and 5. Failure to implement IEPs (provide related services).  (Due Process Complaint at 3; HOD at 3.) The Hearing Officer held a hearing on September 11, 2014, that was continued on October 8, 2014. (HOD at 1.) Plaintiff presented three witnesses and the District presented five witnesses; Plaintiff's 24 exhibits and the District's 18 exhibits were all admitted into evidence. (HOD at 2-3.)

The Hearing Officer concluded that the District did not deny the student a FAPE by failing to evaluate the student (HOD at 10-11); failing to provide an appropriate IEP on April 9, 2013 (HOD at 11-13); or by failing to provide Plaintiff with a prior written notice (HOD at 15-16).  With regard to the Plaintiff's challenge to the February 6, 2014 IEP, the Hearing Officer noted that the student was not denied a FAPE based on the District's change in the student's disability category, development of related service goals that were not based on current assessments, or failure to provide a one-on-one aide but the student was denied a FAPE by being placed in a full-time class.  (HOD at 11-13.) The Hearing Officer explained that when the IEP Team revised the student's IEP from 15 hours per week in the general education setting and 5 hours per week in the special education setting to 25 hours per week in the special education setting, it was a significant change in programming that was not warranted because the student was making progress in the general education setting.  (HOD at 14.)  The Hearing Officer commented that "[i]n this case, the February 6, 2014 IEP team did not consider any harmful effects of placing the student in a full time setting. . . [and] by placing the student in a class of students with ID, the student may not have the opportunity to develop appropriate social skills to successfully interact with nondisabled peers." (*Id.*) The Hearing Officer concluded that the District failed to propose an IEP for SY 2014-2015 that was reasonably calculated to enable the student to make progress in the general education curriculum.  (HOD at 13-15.)

The Hearing Officer found that the student is a student with autism under the IDEA and ordered that the District place the student in general education classes and special education classes so that he receives 5 hours of instruction outside general education and 15 hours inside general education.  (HOD at 16.)  The District was further ordered to convene an IEP Team

Meeting within 10 school days, to determine a program where the student's IEP could be implemented.  (*Id.*)

## II. LEGAL STANDARD

### A.  Summary Judgment on an IDEA Claim

A party moving for summary judgment on legal fees must demonstrate prevailing party status and the reasonableness of the fees requested in terms of hours spent and hourly rate.[5] Pursuant to Fed. R. Civ. P. 56(a), summary judgment shall be granted if the movant shows that there is "no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." *Accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986) (quoting Fed. R. Civ. P. 56).  "A fact is material if it 'might affect the outcome of the suit under the governing law' and a dispute about a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for a nonmoving party.'"  *Steele v. Schafer*, 535 F.3d 689, 692 (D.C. Cir. 2008) (quoting *Anderson*, 477 U.S. 242, 248 (1986)).

Summary judgment should be granted against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). The court is required to draw all justifiable inferences in the nonmoving party's favor and to accept the non-moving party's evidence as true.  *Anderson*, 477 U.S. at 255.  The non-moving party must establish more than "the mere existence of a scintilla of evidence" in support of its position.  *Id.* at 252.  The non-moving party cannot rely on allegations or conclusory statements;

---

[5] The typical summary judgment standard is inapplicable here because "[t]he IDEA authorizes a court to award fees in its discretion and to base the award on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished." *Parks v. District of Columbia*, 895 F. Supp. 2d 124, 129 (D.D.C. 2012) (citation and internal quotations omitted).

instead, the non-moving party is obliged to present specific facts that would enable a reasonable jury to find it its favor. *Greene v Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999).

### 1. Prevailing Party Status

The IDEA gives courts authority to award reasonable attorney's fees to the parents of a child with a disability who is the prevailing party. 20 U.S.C. §1415(i)(3)(B). The court must initially determine whether the party seeking attorney's fees is the prevailing party. *Jackson v. District of Columbia*, 696 F. Supp. 2d 97, 101 (D.D.C. 2010). *See District of Columbia v. West*, 699 F. Supp. 2d 273, 278 (D.D.C. 2010) (In considering a claim for IDEA attorney's fees, it is the court "not the hearing officer in the administrative proceeding, which determines prevailing party status. . . .") (quoting *D.C. v. Straus*, 607 F. Supp. 2d 180, 183 (D.D.C. 2009)).

A party is generally considered to be the prevailing party if he succeeds "on any significant issue in litigation which achieves some of the benefit [ ] sought in bringing suit." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (quoting *Nadeau v. Helgemoe,* 581 F.2d 275, 278-279 (1st Cir. 1978)). The Supreme Court has indicated that the term "prevailing party" only includes plaintiffs who "secure a judgment on the merits or a court-ordered consent decree." *Buckhannon Bd. & Care Home, Inc. v. West Virginia Dep't Health & Human Resources*, 532 U.S. 598, 600 (2001). The Supreme Court therefore rejected the "catalyst theory" whereby a plaintiff would be a prevailing party if the lawsuit brought about the desired result through a voluntary change in the defendant's conduct. *Id.* at 605. The Supreme Court instead determined that a prevailing party must obtain a "material alteration of the legal relationship of the parties." *Id.* at 604 (quoting *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792-93 (1989)). The standards in *Buckhannon* apply to administrative hearings under the IDEA even

though the relief granted is administrative as opposed to judicial.  *Abarca v. District of Columbia*, Civil Action No. 06-1254, 2007 WL 1794101 *2 n.1 (D.D.C. June 19, 2007).

"[T]he term prevailing party [is] a legal term of art that requires more than achieving the desired outcome; the party seeking fees must also have been awarded some relief by the court." *District of Columbia v. Straus*, 590 F.3d 898, 901 (D.C. Cir. 2010) (internal quotations and citations omitted).  In *Straus*, the Court of Appeals considered the following three factors to determine prevailing party status: 1) alteration of the legal relationship between the parties; 2) a favorable judgment for the party requesting fees; and 3) a judicial pronouncement accompanied by judicial relief.  *Id.* at 901.

### 2. Establishing a Reasonable Fee

The plaintiff has the burden of establishing the reasonableness of any fee requests.  *See In re North*, 59 F.3d 184, 189 (D.C. Cir. 1995).  *See also Covington v. District of Columbia*, 57 F.3d 1101, 1107 (D.C. Cir. 1995) ("[A] fee applicant bears the burden of establishing entitlement to an award, documenting the appropriate hours, and justifying the reasonableness of the rates.") "An award of attorneys' fees is calculated by multiplying a reasonable hourly rate by the number of hours reasonably expended on the case."  *Smith v. Roher*, 954 F. Supp. 359, 364 (D.D.C. 1997) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)); *see also Blum v. Stenson*, 465 U.S. 886, 888 (1984).

The IDEA states that "[f]ees awarded under this paragraph shall be based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished."  20 U.S.C. §1415(i)(3)(C).  To demonstrate a reasonable hourly rate, the fee applicant must show: (1) an attorney's usual billing practices; (2) counsel's skill, experience and reputation; (3) the prevailing market rates in the community.  *Covington*, 57 F.3d at 1107

(citations omitted.)  The determination of a "'market rate' for the services of a lawyer is

inherently difficult" and is decided by the court in its discretion.  *Blum*, 465 U.S. at 896 n.11.

"To inform and assist the court . . . , the burden is on the fee applicant to produce satisfactory

evidence –in addition to the attorney's own affidavits - that the requested [hourly] rates are in

line with those prevailing in the community for similar services by lawyers of reasonably

comparable skill, experience and reputation."  *Id.*  Additionally, an attorney's usual billing rate

may be considered the "reasonable rate" if it accords with the rates prevailing in the community

for similar services by lawyers possessing similar skill, experience and reputation.  *Kattan by*

*Thomas v. District of Columbia*, 995 F.2d 274, 278 (D.C. Cir. 1993).

### III. <u>ANALYSIS</u>

#### A. Plaintiff's Prevailing Party Status

Defendant contends that:

> Plaintiff did not prevail on [four] of her [five] claims,[6] including . . . her argument that
> DCPS failed to appropriately evaluate the student, HOD at 10, her argument that the
> student was denied a FAPE by DCPS's failure to provide Plaintiff with a prior written
> notice of transferring the student to a more restrictive setting, HOD at 15-16, her
> challenge to the student's April 9, 2013 IEP, HOD at 11-12, or on three of her four
> challenges to the February 6, 2014 IEP, HOD at 11-12.

(Cross-Motion at 12)[7]  The District concludes that Plaintiff's "minimal" success warrants a 70%

reduction in the fees claimed by the Plaintiff.  (*Id.*)

Plaintiff argues that the court should "decline to reduce Ms. Collins' fee award because

---

[6] The District originally alleged that Plaintiff did not prevail on her claim for compensatory
damages but later dropped this allegation.  *See* Notice of Errata [15] at 1 (noting that the due
process complaint request for compensatory damages was not actually litigated).

[7] The District further notes that  the student was "not placed in a full-time special education
setting until the beginning of the 2014-2015 school year [and] [t]he HOD was issued early in the
2014-2015 school year on October 22, 2014." (Cross-Motion at 12; HOD at 1, 9, 14.)

[ ] she obtained her primary objective of removing her autistic child from an overly restrictive setting that was for intellectually disabled students and effecting the IDEA's mainstreaming requirement for her son." (Pl.'s Reply at 8.) Upon review of the record in this case, it is evident that Plaintiff accomplished relief she sought at the administrative level; i.e., her child's placement in a less restrictive environment and that Plaintiff should thus be considered a prevailing party entitled to reasonable attorney's fees. (HOD at 13-15, 16.) *See Wood v. District of Columbia*, 864 F.Supp.2d 82, 89 (D.D.C. 2012) (finding that plaintiff was a prevailing party because she accomplished "her primary objective at the administrative hearing"). Plaintiff did not however prevail on all the claims that she pursued.  *See generally* HOD.

A court can "adjust" the fee award based on "results obtained" and consideration of such results is "particularly crucial where a plaintiff is deemed 'prevailing' even though he succeeded on only some of his claims for relief."  *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983); *see also Tex. State Teachers Ass'n. v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792-93 (1989). "A reduced fee award is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole." *Hensley*, 461 U.S. at 440.  "The mere fact that plaintiffs do not prevail on every claim does not preclude an award of fees for all work reasonably performed, but it is rarely an abuse of discretion to refuse to award fees for work done on non-prevailing claims that are not closely related to the relief obtained."  *Hensley*, 461 U.S. at 452-53 (Burger, C.J., concurring). Because there were several issues in this case on which Plaintiff clearly did not prevail, the undersigned recommends that Plaintiff's fees relating to the administrative

proceeding be reduced overall by thirty-five percent (35%) to reflect her status as a partially prevailing party.[8]

## B. Hours Billed by Counsel

Plaintiff billed for 130.4 total hours, which includes 119.6 hours for work relating to the administrative due process proceeding, billed at $450.00/hour; 4.8 hours for work relating to the fee petition, billed at $450.00/hour; and 6.0 hours for travel billed at $225.00/hour. (Motion, Exh. 3 [Billing Records] [11-6].)  The undersigned has reviewed the Billing Records submitted by Plaintiff's counsel and does not recommend the specific exclusion of any of the charges.

## C. Hourly Rate

### 1. Use of *Laffey* Matrix Rates

Pursuant to the IDEA, federal courts may award "reasonable" attorney's fees, 20 U.S.C. §1415(i)(3)(B)(i), which are based on rates "prevailing in the community . . . for the kind and quality of services furnished."  20 U.S.C. 1415(i)(3)(C).  Plaintiff proffers evidence to establish her attorneys' experience, skill, and reputation in IDEA matters. (Motion, Exh. 5 [Declaration of Carolyn Houck, Esq.] ("Houck Declaration") [11-8] ¶¶1-2.)  Plaintiff contends that her attorney, Ms. Houck, should be compensated at a rate of $460.00 per hour for work performed. (Memorandum at 7; Billing Records; Motion, Exh. 4 [2014-2015 *Laffey* Matrix] [11-7].)[9]

---

[8] The Billing Records submitted by Plaintiff's counsel make it impossible to separate out the charges for legal work that related to the issues on which Plaintiff did not prevail.  (Motion, Exh. 3 [Billing Records] [11-6].)

[9] Counsel bills at $450.00/hour but Plaintiff asked for reimbursement of the "additional amount authorized in the Laffey Matrix issued for years 2014/2015, ($1,244)" which would bring counsel's billing rate up to $460.00/hour.  (Memorandum at 7.) The *Laffey* Matrix, developed in *Laffey v. Northwest Airlines, Inc.*, 572 F. Supp. 354, 372 (D.D.C. 1983) *aff'd in part, rev'd in part on other grounds*, 746 F.2d 4 (D.C. Cir. 1984), is generally used to determine a reasonable hourly rate for complex federal litigation in the District of Columbia.  *Heller v. D.C.*, 832 F.Supp.2d 32, 40 (D.D.C. 2011).  The United States Attorney's Office for the District of Columbia updates the Matrix annually to reflect increases in the local Consumer Price Index ("CPI").  *Rooths v. District of Columbia,* 802 F. Supp. 2d 56, 61 (D.D.C. 2011).

Plaintiff's counsel utilizes hourly rates that are consistent with the *Laffey* Matrix rates for 2013-2014 for an attorney 11-19 years of experience and "within the prevailing market rate." (Houck Declaration ¶5.)[10]

In her Motion, Plaintiff provides no evidence of the prevailing market rate for IDEA litigation in the District of Columbia other than attaching a copy of the *Laffey* Matrix for 2014-2015 and submitting a declaration by her counsel stating that the rate requested is the rate counsel normally bills.[11]  *See Nat'l Assoc. of Concerned Veterans v. Secretary of Defense*, 675 F.2d 1319, 1325 (D.C. Cir. 1982) ("[A[ffidavits reciting the precise fees that attorneys with similar qualifications have received from fee-paying clients in comparable cases provide prevailing community rate information.  Recent fees awarded by [ ] courts or through settlements to attorneys of comparable reputation and experience performing similar work are also useful guides in setting an appropriate rate.") Counsel's declaration does not indicate whether the rates she charges are the rates regularly paid by non-contingency clients, or even whether she is regularly retained by non-contingency clients. *See generally McAllister v. District of Columbia*, 21 F.Supp.3d 94, 108 (D.D.C. 2014) (discussing the defects in an affidavit submitted by counsel in support of billing rates; namely, that the affidavit did "not provide sufficient information for the Court to determine whether these rates represent the market rate for routine IDEA litigation").

---

[10] All charges were incurred from June 10, 2014 through January 27, 2015, which would correspond to the *Laffey* Matrix for 2014-2015. (Billing Records.)

[11] Plaintiff also provided a Declaration by Kimberly Glassman, an attorney who has been practicing in the field of special education for seven years.  (Motion, Exh. 6 [Declaration of Kimberly Glassman ("Glassman Declaration") [11-9].)  The Glassman Declaration provides no guidance as to the prevailing market rate but does attest to the fact that counsel is "ethical, hardworking, [and] dedicated to her clients and the practice of special education law." ([11-9] ¶3.)

The Court of Appeals has recently opined that a plaintiff's evidentiary submission consisting of "the [ ] *Laffey* Matrix, [a] declaration explaining the [ ] *Laffey* Matrix and her lawyer's verified statement averring that he charged his paying clients the rates in the [ ] *Laffey* Matrix" was insufficient evidence to demonstrate that the requested rates were the rates prevailing in the community for similar services. *Eley v. District of Columbia*, 793 F.3d 97, 104 (D.C. Cir. 2015).[12]  The Court of Appeals accordingly found that the plaintiff "[did] not [meet] her burden of 'justifying the reasonableness of the rates.'" *Eley, id.* (citing *Covington*, 57 F.3d at 1107).  *See also Devore on behalf of A.M. v. District of Columbia*, Civil Action No. 14-0061 (ABJ), 2015 WL 1478433 *5 (March 31, 2015) (awarding *Laffey* rates but noting that "[t]here [was] no information about the prevailing rates for special education litigators, or any federal litigators, in this market beyond reference to *Laffey* [and further, that] the plaintiff could have done more to meet her burden to establish the reasonableness of her rates.")

The undersigned recommends that the Court decline to award *Laffey* Matrix rates because Plaintiff has failed to demonstrate that such rates are the prevailing market rates for IDEA litigation in the metropolitan D.C. area.  The *Laffey* Matrix may however be used as "an appropriate starting point for determining rates of reimbursement for attorneys who challenge the decisions of the DCPS." *Brighthaupt v. D.C.*, 36 F.Supp.3d 1, *4 (D.D.C. 2014).  *See also Robinson v. District of Columbia*, 61 F.Supp.3d 54, *61 (D.D.C. 2014) ("[B]y pointing to the *Laffey* matrix as her proof of prevailing community rates, the plaintiff  has provided the

---

[12] In *Eley*, the District cited more than 40 IDEA fees cases in which the plaintiffs therein received fee awards based on lower prevailing hourly rates.  793 F.3d at 102.  The Court of Appeals noted that "evidence of the prevailing market rate can take many forms."  *Eley*, 793 F.3d at 104 n.5. *See Covington*, 57 F.3d at 1113 (Henderson, J, dissenting)("A statistically reliable, well-documented, and extensive survey of the rates clients pay for a certain sub-market of legal services would be powerfully persuasive.") (emphasis omitted)).

appropriate starting point for the 'case by case analysis' that must be made when evaluating a fee petition under the IDEA.")

Defendant asserts that the *Laffey* Matrix "comprises the presumed *maximum* rates for complicated federal litigation." (Cross-Motion at 7 (emphasis in original)). *See Briggs v. District of Columbia*, 73 F.Supp.3d 59, *63 (D.D.C. 2014) ("*Laffey* rates represent presumptive maximum rates for complex federal litigation and '[c]ourts in this district do not generally recognize IDEA litigation as a type of complex federal litigation.'") (quoting *McAllister v. District of Columbia*, 21 F.Supp.3d 94, 108 (D.D.C. 2014)). Defendant argues that "[t]he relevant legal market is that of [IDEA] administrative proceedings rather than complex federal litigation" where complex federal litigation includes antitrust cases, Fourth Amendment search and seizure cases, and Title VII employment discrimination cases litigated in federal district court. *See Blum* v. *Stenson*, 465 U.S. 886, 893-94 (giving examples of complex federal litigation). Defendant contrasts complex federal litigation, employing the Federal Rules of Civil Procedure and Federal Rules of Evidence, with administrative proceedings governed by 20 U.S.C. §1415. (Def.'s Reply at 4-6.) Defendant asserts that an hourly rate of 75% of the *Laffey* rate is warranted here because that is the prevailing market rate for non-complex IDEA cases (Cross-Motion at 8-9 (string citing cases)).[13]

In an analysis of what constitutes a "reasonable" attorney's fee, courts may consider factors such as the complexity of the issues addressed during the IDEA administrative process, the work that was performed by counsel, and the manner in which the disputed issues were

---

[13] Plaintiff asserts generally that "[t]he *Laffey* Matrix has been utilized by Judges Sullivan, Kessler, Lamberth, Urbina, Robinson, and Friedman of the Honorable Court and many other judges of this Court in various and similar matters." (Memorandum at 5.) Defendant acknowledges that there is a split among judges in this District as to the hourly rate for attorneys handling IDEA fees cases. (Cross-Motion at 9.)

resolved. *See, e.g., McAllister v. D.C.*, 21 F.Supp.3d 94, 108-100 (D.D.C. 2014) (discussing

reasons for awarding less than full *Laffey* rates and distinguishing circumstances where rates

equaling or exceeding *Laffey* have been applied); *Parks v. D.C.*, 895 F.Supp.2d 124 (D.D.C.

2012) (examining the record in the case with regard to the complexity of the proceedings, to

determine whether fees equal to or near the *Laffey* rate apply).

      In this case, the undersigned recommends the reimbursement of fees at 75% of the 2014-

2015 *Laffey* Matrix rates with regard to counsel's work on the administrative proceeding and

reimbursement at 50% of those *Laffey* Matrix rates with regard to the 4.8 hours counsel billed for

"fees-on-fees"; i.e., preparation of the fee petition and review of the billing records.  *See*

*generally Price v. District of Columbia*, 792 F.3d 112, *117 (D.C. Cir. 2015) (Brown, J.,

concurring) ("In deciding what constitutes reasonable attorneys' fees, courts have a tendency to

err on the side of awarding too much rather than too little.  However inflated fee awards are far

from harmless: they produce windfalls to attorneys at the expense of public education.")

      The undersigned does not dispute that counsel's knowledge of IDEA law, experience,

and understanding of the procedural aspects of administrative hearings helped counsel to obtain

the relief ordered by the Hearing Officer. In this case however, while the student's February 6,

2014 IEP Team revised the student's IPE from 15 hours per week in the general education

setting and 5 hours per week in the special education setting to 25 hours per week in the special

education setting, the student remained in the general education setting for the balance of SY

2013-2014.  (HOD at 14.)  The student was not placed in a separate special education class until

the beginning of SY 2014-2015.  (HOD at 9, 14.) On October 22, 2014, the Hearing Officer

ordered that "DCPS shall place the student in general education classes and special education

classes so that he may receive five hours of specialized instruction outside the general education

setting and fifteen hours of specialized instruction in the general education setting" and further, that the IEP team meet to determine an appropriate program where the student's IEP may be implemented.  (HOD at 16.)  According to counsel's Billing Records, by November 16, 2014, five months after Plaintiff first met with counsel regarding this matter, DCPS had "fully satisfied the HOD." (Billing Records at 10.)  The undersigned notes that because the IEP Team made its determination in February 2014 but the student was not placed in a special education setting until the beginning of SY 2014-2015, if the Due Process Complaint had been filed earlier, this matter could have been resolved prior to the start of SY 2014-2015.[14]

The Billing Records and pleadings submitted by Plaintiff do not indicate that the legal issues addressed were novel or that the Due Process hearing presented any significant challenges. The Due Process Complaint was filed on August 8, 2014 and a resolution meeting took place on August 22, 2014.  (HOD at 2.)  The hearing was set for September 11, 2014, at which time the Plaintiff presented three witnesses and concluded her case and the District presented four witnesses but did not conclude its case. (*Id.*)  The hearing resumed on October 8, 2014 and the Hearing Officer issued his HOD on October 22, 2014. (HOD at 1.)

 Upon review of the record in this case, the undersigned recommends that counsel's hourly billing rates should be calculated as three-quarters of the ($460.00) *Laffey* rate, with a resulting hourly rate of $345.00, except for the aforementioned 4.8 hours which should be reimbursed at an hourly rate of $172.50 (one-half of the adjusted *Laffey* rate).

## 2. Travel Time

The following charges correspond to the time billed by counsel for travel:  3.0 hours on 9-11/14 and 3.0 hours on 10/8/14.  (Billing Records at 10.)  "In this circuit, travel time generally

---

[14] The Billing Records indicate that Plaintiff worked with a "prior attorney" before retaining Ms. Houck.  (Billing Records at 1.)

is compensated at no more than half the attorney's appropriate hourly rate." *Blackman v. District of Columbia*, 397 F. Supp.2d 12, 15 (D.D.C. 2005) (citing *Cooper v. United States R.R. Ret. Bd.*, 24 F.3d 1414, 1417 (D.C. Cir. 1994)); *A.C. ex rel Clark v. District of Columbia*, 674 F.Supp.2d 149, 159 (D.D.C. 2009); *Laster v. District of Columbia*, Civ. No. 05-1875, 2006 WL 2085394, at *4 (D.D.C. July 25, 2006). Accordingly, the undersigned recommends that these six hours be reimbursed at an hourly rate equivalent to 50% of the aforementioned adjusted hourly rate of $345.00, which is $172.50.

### D. Costs

Plaintiff requests reimbursement of $787.00 in costs: $36.00 for parking; copying 1,340 pages at $.15 per page totaling $201.00; a $400.00 filing fee and $150.00 service fee. (Billing Records at 10.) The undersigned recommends that the Plaintiff's costs be reimbursed in full.

### IV. <u>RECOMMENDATION</u>

The undersigned recommends that for the reasons stated above, Plaintiffs' Motion for Summary Judgment [11] be granted in part and denied in part, and Defendant's Cross-Motion [13] be granted in part and denied in part. In this case, Plaintiff's counsel, Ms. Houck documented 124.4 hours at $450.00/hour, and 6.0 hours [travel] at $225.00/hour. (Billing Records.) The undersigned recommends a reduction in hours and hourly rates as follows:

- Application of a billing rate of $345.00/hour for 119.6 hours spent on legal work, totaling $41,262.00

- Application of a billing rate of $172.50/hour for 6 hours of travel time, totaling $1,035.00

- Application of a billing rate of $172.50/hour for 4.8 hours spent on "fees-on-fees" work, totaling $828.00

- The subtotal of $41,262.00 should be reduced by 35% (for non-prevailing party issues), with an adjusted subtotal of $26,820.30.

The undersigned thus recommends that Plaintiff Collins is entitled to attorney's fees totaling $28,683.30 and costs in the amount of $787.00.

## V. **REVIEW BY THE DISTRICT COURT**

The parties are hereby advised that under the provisions of Local Rule 72.3(b) of the United States District Court for the District of Columbia, any party who objects to the Report and Recommendation must file a written objection thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation.  The written objections must specifically identify the portion of the report and/or recommendation to which objection is made, and the basis for such objections.  The parties are further advised that failure to file timely objections to the findings and recommendations set forth in this report may waive their right of appeal from an order of the District Court that adopts such findings and recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985).

Date: September 15, 2015

_____/s/_____
ALAN KAY
UNITED STATES MAGISTRATE JUDGE